# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KRISTOFER THOMAS KASTNER, et. al.

*Plaintiffs*,

vs.

Case No. 10-1012-EFM

INTRUST BANK, et.al.,

*Defendants.*

## MEMORANDUM AND ORDER

Approximately fifteen years ago, Plaintiff Kristofer Thomas Kastner's grandmother executed a trust with Intrust Bank, as Trustee.[1] Plaintiff now brings this against Intrust Bank and four of its bank officers. Plaintiff alleges that the trust has lost value since his grandmother's death. The matter is now before the Court on Defendants' Motion to Dismiss (Doc. 17). For the following reasons, the Court grants in part and denies in part Defendants' motion.

---

[1] Plaintiff also filed suit against the attorney who drafted the trust, Robert Guenthner, and Guenthner's law firm, Morris, Laing, Evans, Brock and Kennedy, Chartered in a related case, Case No. 10-1013. This case was recently dismissed.

## I. Factual and Procedural Background[2]

Plaintiff Kristofer Thomas Kastner resides in Texas.[3] Defendant Intrust Bank is located in Wichita, Kansas. Defendant C.Q. Chandler is President, Chairman, and CEO of Intrust Bank; Defendant Roger W. Lemon and Defendant Michael Cannady are former Vice-Presidents of the bank and trust officers of the Jessie I Brooks trust; and David Sutton is an officer of Intrust who works on the Jessie I. Brooks trust.

On June 5, 1996, Jessie I. Brooks executed a trust, the "Jessie I. Brooks Revocable Trust." Jessie I. Brooks was 86 years old, lived alone, and allegedly had health issues at the time she executed the Trust agreement. Ms. Brooks possessed no formal education and allegedly suffered from dementia and occlusion of blood flow to her brain. Due to her ailments, Plaintiff asserts Ms. Brooks lacked capacity to understand the nature of the trust agreement.

The Trust Agreement, prepared by Robert Guenthner, provided for distributions during the lifetime of the settlor and, upon her death, continued for the benefit of the settlor's daughter, Nola Mae Wills. The remainder of the Trust assets are to be distributed to the settlor's grandson, Plaintiff Kastner, upon the death of Wills. Ms. Brooks died in 2000.

In January of 2009, Plaintiff received a letter from Intrust Bank which he asserts shows the trust had lost significant money since the death of his grandmother in 2000. From 2000 through

---

[2]For the purposes of this Order, the Court assumes the truth of these facts and considers them in the light most favorable to Plaintiff. When Defendants filed their Motion to Dismiss, they attached a copy of the Trust Agreement. Notwithstanding the general principle that the Court should not consider matters outside the complaint without converting a motion to dismiss or motion for judgment on the pleadings to a motion for summary judgment, "if a plaintiff does not incorporate or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[3]He brings this suit as a beneficiary of the Trust. Plaintiff also attempts to bring suit as representative of the Estate of Jessie I. Brooks, as the Estate of Jessie I. Brooks, and as Jessie I. Brooks.

2008, the Jessie I Brooks trust lost $40,485.60. Plaintiff contends that the value of the trust should be at least $1.4 million instead of $847,000.

The trust contains waivers of negligence and the prudent investor standard at sections 5.4 and 6.4. Section 5.4 of the Trust Agreement provides:

> <u>Investments</u>. Trustee shall have full right, power, and authority to invest and reinvest any and all funds or other assets coming into Trustee's hands as part of the trust estate without being restricted to making what is commonly known as "legal investments" and whether or not such investments comply with what are commonly known as the "prudent man" and "prudent investor" rules. Without limiting the generality of the foregoing, the Trustee shall have full right, power and authority to carry on any business or partnership which Settlor may own or in which Settlor may have an interest at the time of Settlor's death, and to invest in corporate stocks, securities, and obligations of every kind, whether listed or unlisted, as well as other assets as Trustee may in Trustee's discretion deem advisable for the best interests of the Trust.

Section 6.4 of the Trust Agreement provides:

> <u>Liability of Trustee.</u> Trustee shall not be liable for any mistakes in judgment or for the acts, negligence or defaults of any other trustee, agent or person employed by Trustee or for the acts of any person into whose hands any Trust funds may properly be deposited or come; provided, however, that nothing in this section shall relieve any Trustee from liability for failure to participate in the administration of the Trust or to attempt to prevent a breach of Trust, or from liability for the defalcation of its regular employees. No successor trustee shall be liable for the acts of any prior trustee, nor for failing to investigate the propriety of the acts of any prior Trustee.

Plaintiff contends that the devaluation of the trust was due to a poor investment strategy because Defendants failed to disclose the legal effect of the waivers and the effect the waivers would have on the trust property. Plaintiff also asserts that Defendants have acted in bad faith in the treatment of the Jessie I. Brooks trust because the exercise of the trustee's discretion has caused and will cause significant loss to the trust property.

Plaintiff asserts several claims against Defendants.[4] These include: (1) breach of fiduciary duties in the creation and execution of the trust; (2) breach of fiduciary duty to refrain from self-dealing to Jessie I. Brooks in entering into the Trust agreement; (3) failure to exercise the degree of care and skill which would be used by a reasonably competent trustee under the same or similar circumstances in failing to produce advice, counsel, or explanation of the waivers of the negligence and prudent investor standards; (4) breach of trust against Jessie I. Brooks, her estate, and Kastner; (5) negligent misrepresentations to Jessie I. Brooks, her estate, and Kastner as to the nature of the Trust agreement and the consequences of its waiver provisions; (6) fraud by silence by failing to disclose the legal effect of the form of the trust or waiver provisions; (7) fraud by silence by failing to disclose material facts concerning the nature of the Trust investments or explain poor investments; (8) fraud in the creation and investment of the Trust agreement; and (9) reformation of the Trust agreement to remove the provisions concerning waivers of the negligent and prudent investor standards.

Plaintiff contends he discovered the devaluation of the Jessie I Brooks trust on January 14, 2009, when Intrust Bank mailed him a performance report. He asserts that discovery of the performance of the trust prior to this date was delayed due to the concealment of Intrust Bank and the firm of the nature of the trust and the waiver provisions. Plaintiff claims that he has suffered damages because 1) the trust is undervalued; 2) he lives at a lower standard of living due to the existence of the trust; 3) he is unable to afford legal counsel in this and other matters as a result of the existence of the trust; 4) he does not own a home, a car, is unmarried, and without children due to the existence of the trust; and 5) he and his descendants have lost fourteen years of time value of

---

[4]These claims are similar to the claims brought against the Defendants in Case No. 10-1013, although there are some variations.

the money during a period of economic expansion with rapidly increasing stock values as a result of mismanagement of the trust.

Plaintiff filed his Complaint on January 13, 2010. Defendants filed a Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7) and 21 asserting that the Court lacks subject matter jurisdiction, Plaintiff fails to state a claim upon which relief may be granted, and Plaintiff fails to join a necessary and indispensable party under Rule 19. Alternatively, Defendants request the Court to strike the Estate of Jessie I. Brooks, Jessie I. Brooks, and Mr. Kastner individually and as representative of the Estate of Jessie I. Brooks.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[5] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6] In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense.[7] All well pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.[8] Allegations that merely state legal conclusions, however, need not be accepted as true.[9]

---

[5] *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twonbly*, 550 U.S. 544, 570 (2007)).

[6] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[7] *Iqbal*, 129 S.Ct. at 1950.

[8] *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[9] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Because Plaintiff is pursuing this action pro se, the Court must be mindful of additional considerations. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[10] However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant."[11] "[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[12]

**III. Analysis**

Defendants assert that the questioned Trust agreement provisions are appropriate and in accordance with the Uniform Trustee's Powers Act ("UTPA") and the Prudent Investor Act ("PIA") as they existed in 1996 when the trust was prepared. Defendants also contend that Plaintiff's claims are barred by Kansas' ten year statute of repose because all of the alleged wrongful conduct on behalf of Defendants is predicated on the consequences of the waiver provisions in the Trust agreement. In addition, Defendants assert that the failure to join Nola Mae Wills as a party necessitates dismissal under Fed. R. Civ. P. 12(b)(7). Finally, Defendants contend that Plaintiff Kastner, as a contingent beneficiary and not a qualified beneficiary, does not have standing to bring a claim for reformation of the trust. Alternatively, Defendants assert that the Estate of Jessie I. Brooks and Jessie I. Brooks do not have capacity to bring this suit, and Plaintiff Kastner does not have standing to bring the suit as a representative of the Estate of Jessie I. Brooks. As such, these individuals or entities should be struck from the Complaint.

---

[10] *Id.*

[11] *Id.*

[12] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

Plaintiff contends that the ten year statute of repose does not apply and the limitations period can be tolled on the facts alleged. In addition, Plaintiff asserts that Nola Wills is not an indispensable party but possesses independent claims of her own, and Ms. Wills has intentionally avoided Plaintiff's attempt to contact her in connection with the suit. Plaintiff claims that he is the best person to stand as representative of the estate. He also claims that he is a qualified beneficiary; therefore, he asserts that he has standing to bring the reformation claim.

*Statute of Repose*

Jurisdiction arises on the basis of diversity; therefore, the law of the forum state, Kansas, applies.[13] Defendants contend that Plaintiff, as a contingent beneficiary, can bring this lawsuit but has no greater rights than those possessed by the settlor. Defendants rely on the decision of the Kansas Supreme court in *Pizel v. Zuspann*.[14] In *Pizel*, the court determined that beneficiaries to a trust could proceed with a legal malpractice claim based on negligence despite the lack of privity between the attorney and the beneficiaries.[15] The court in *Pizel* set forth a six-part balancing test to determine whether a duty arose to the intended beneficiaries.[16] Although the parties do not discuss the balancing test or other aspects of that case, Defendants and Plaintiff proceed as if Plaintiff may bring this suit.[17] As such, the Court will as well.

---

[13]*Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1167 (10th Cir. 2007).

[14]247 Kan. 54, 795 P.2d 42 (1990) (*modified by Pizel v. Zuspann*, 247 Kan. 699, 803 P.2d 205 (1990)).

[15]*Id*. at 67, 795 P.2d at 51.

[16]*Id*. at 67-68, 795 P.2d at 51. The statute of repose was not at issue in *Pizel*.

[17]Although Defendants assert that certain Plaintiffs do not have capacity to sue, they do not appear to address Plaintiff Kastner's ability, as a beneficiary, to bring suit on most claims, with the exception of Plaintiff's reformation of trust claim.

"A federal court sitting in diversity applies state law for statute of limitations purposes."[18] In Kansas, the statute of limitations for tort claims is generally two years.[19] The statute, however, also has what is considered a statute of repose. K.S.A. § 60-513(b) provides:

> Except as provided in subsections (c) and (d), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

"A statute of repose limits the time during which a cause of action can arise and usually runs from the act of a defendant."[20] Because it is a statute of repose, K.S.A. § 60-513(b) "bars the cause of action after the 10-year period even though the action may not have yet accrued."[21]

Defendants contend that the alleged wrongful conduct, however characterized, occurred on or before Jessie I. Brooks executed the Trust agreement. The Court cannot agree, and we must construe the pleadings liberally as Plaintiff is pursuing this action pro se. While some of the alleged conduct is predicated on the provisions of the Trust waiving negligence and the prudent investor standard, several of the claims allege conduct that could plausibly occur with or without the inclusion of the waiver provisions in the Trust agreement and do not appear to be dependent on the waiver provisions.[22]

---

[18]*Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005) (citation omitted).

[19]K.S.A. § 60-513(a).

[20]*Harding v. K.C. Wall Prods., Inc.*, 250 Kan. 655, 668, 831 P.2d 958, 967 (1992).

[21]*Id.* at 669, 831 P.2d at 968.

[22]The allegations in this case differ from the allegations in Case No. 10-1013 in which everything was predicated on the inclusion of the waiver provisions, as the defendants there performed no other work after the execution of the Trust agreement.

Those claims include Plaintiff's allegations of: (4) a breach of trust; (7) fraud by silence by failing to disclose material facts concerning the nature of the Trust investments or explain poor investments and; (8) fraud in the creation and investment of the Trust agreement.[23] Defendants include Intrust Bank and several employees of Intrust Bank, and Defendants are allegedly responsible for the trust and the investing of the Trust assets. Because Plaintiff's allegations broadly state that Defendants have mismanaged the trust by failing to disclose pertinent information and poor performance is in part due to poor investment strategy, the alleged conduct plausibly could have occurred subsequent to 1996 and through the time of the filing of the Complaint. At this stage, the Court cannot conclude as a matter of law that Defendants' last alleged wrongful conduct with respect to these claims occurred more than 10 years prior to the filing of this Complaint.

Several of Plaintiff's other claims, however, are related to the creation and inclusion of the waiver provisions in the Trust agreement and are barred by the statute of repose. These include: (1) a breach of fiduciary duty in the execution of the Trust; (2) breach of fiduciary duty to refrain from self-dealing to Jessie I. Brooks in entering into the Trust agreement; (3) failure to exercise the degree of care and skill which would be used by a reasonably competent trustee under the same or similar circumstances in failing to produce advice, counsel, or explanation of the waivers of the negligence and prudent investor standards; (5) negligent misrepresentations to Jessie I. Brooks, her estate, and Kastner as to the nature of the Trust agreement and the consequences of its waiver provisions; (6) fraud by silence by failing to disclose the legal effect of the form of the trust or waiver provisions.[24]

---

[23]With respect to claim eight, Plaintiff alleges fraud in the creation and investment of the Trust. With respect to fraud in the creation of the Trust, this is barred by the statute of repose; however, the investment claim remains.

[24]The Court will discuss Plaintiff's ninth claim, reformation of the trust, in further detail below.

Plaintiff appears to argue that he possessed no cause of action prior to his grandmother's death, and alternatively that he did not have information to put him on notice of the fraud until January of 2009 when he received a letter regarding the trust. As noted above, however, a statute of repose extinguishes a cause of action after a certain time even though the action or injury may not yet have accrued. With respect to the five claims outlined above, Plaintiff's claims are premised on the same alleged wrongful conduct - the creation or execution of the Trust agreement and the inclusion of certain provisions in the Trust agreement which allegedly waived negligence and the prudent investor standard. Plaintiff's grandmother executed the Trust agreement on June 5, 1996. Plaintiff did not file this lawsuit until 2009, fourteen years after his grandmother executed the Trust agreement; therefore, these four claims are barred by the ten-year statute of repose.

With respect to Plaintiff's reformation of trust claim, Plaintiff contends that Defendants did not specifically address the issue in their motion, and the Court should therefore not rule on this issue. In Defendants' reply, they contend that Plaintiff does not have standing to bring a claim for reformation of trust because Plaintiff is not a qualified beneficiary. Plaintiff filed a sur-reply in which he asserts that he is a qualified beneficiary because Defendants have informed him, both in writing and orally, that he is a qualified beneficiary. At this stage, the Court cannot conclude as a matter of law that Plaintiff cannot bring this claim. Therefore, this claim survives Defendants' motion to dismiss.

### *Indispensable Party*

Defendant also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join a necessary and indispensable party under Fed. R. Civ. P. 19. "The proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed

by an absent party and that the protection of that interest will be impaired by the absence."[25] The defendant may meet its burden by providing "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence."[26]

To determine whether a party is indispensable under Rule 19(b), the Court applies a three part test.[27] The Court first determines whether the absent party is necessary.[28]

> A person is necessary if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.[29]

Next, if the absent party is necessary, the Court must determine whether joinder is "feasible."[30] The final step, if joinder is not feasible, is to determine whether in "equity and good conscience" the action can continue without the indispensable party.[31]

In sum, Rule 19 provides that a necessary party should be joined to the action, but dismissal is not contemplated unless joinder is not feasible. Defendants contend that Nola Mae Wills is an indispensable and necessary party, but they do not address steps two and three as they do not address the feasibility of her joining in the action nor do they address whether in equity and good conscience

---

[25] *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

[26] *Id.*

[27] *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).

[28] *Id.*

[29] *Id.* (citing Fed. R. Civ. P. 19(a); *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999)).

[30] *Id.* (citing Fed. R. Civ. P. 19(a)-(b)).

[31] *Id.*

the action could continue without her joinder. Consequently, they do not meet their burden in demonstrating that Ms. Wills is a necessary and indispensable party under Rule 19. As such, there is no basis for dismissal pursuant to Rule 12(b)(7).

*Capacity to Sue*

Defendants contend that should the Court not dismiss this action for failure to join an indispensable party, in the alternative, several Plaintiffs should be struck from the pleadings because they do not have the capacity to sue.[32]

Jessie I. Brooks is a named Plaintiff, but she is deceased. "Under Kansas law, a decedent lacks the capacity to sue or be sued."[33] Accordingly, Jessie I. Brooks is struck from the Complaint as a plaintiff.

In addition, the Estate of Jessie I. Brooks is a named Plaintiff. Defendants assert that the Estate of Jessie I. Brooks does not have the capacity to sue because absent an administrator or executor, an estate lacks the ability to sue or be sued. Defendants cite to *Vorhees v. Baltazar*.[34] In *Vorhees*, the plaintiff filed suit against a decedent and against the unappointed administrator of the decedent's estate.[35] The Kansas Supreme Court determined that although the estate lacked capacity to be sued at the time of the filing of the lawsuit because an administrator had not yet been appointed, the subsequent appointment of an administrator to the estate allowed the plaintiff to

---

[32] As noted above, it does not appear that Defendants address Plaintiff's ability or lack of ability to sue as a beneficiary of the Trust, except with respect to Plaintiff's reformation claim.

[33] *Esposito v. United States*, 368 F.3d 1271, 1274 (10th Cir. 2004); see also *Anderson v. Estate of Peterson*, 97 P.3d 1072, 2004 WL 2160734, at *2 (Kan. App. Sept. 24, 2004) ("[A] dead person may not sue or be sued in his or her individual name.").

[34] 283 Kan. 389, 153 P.3d 1227 (2007).

[35] *Id*. at 390-91, 153 P.3d at 1230.

substitute an appropriate defendant.[36]

Here, the Court is unclear whether Defendants argue for striking the Estate because no legal entity exists since there is no administrator of the Estate, or because the administrator was not named as the plaintiff bringing suit.[37] In any event, there is no question that the claims were not brought by the administrator of the Estate but instead were purportedly brought by the Estate itself. As such, the Estate of Jessie I. Brooks is an improper party and must be struck from the Complaint.

Finally, Defendants argue that Kastner's attempt to bring claims, as personal representative of Jessie I. Brooks' estate, is improper because he does not have standing to bring the claim as a representative of the Estate because he is not the real party in interest. Plaintiff contends that he is a real party in interest, and he will represent the estate in the best possible manner. "The administrator or executor of an estate, as the personal representative, is ordinarily the only one authorized to represent the estate."[38] Kastner was not named the executor or administrator of the Estate, and he is not the personal representative of the Estate.[39] As such, Kristofer Kastner, as representative of the Estate, is also struck from the Complaint as Plaintiff.

**IT IS ACCORDINGLY ORDERED** that Defendants' Motion to Dismiss (Doc. 17) is hereby **GRANTED IN PART** as to claims one, two, three, five, and six and **DENIED IN PART** as to claims four, seven, eight, and nine.

---

[36]*Id.* at 404-06; 153 P.3d at 1237-38.

[37]Defendants provided a copy of Jessie I. Brooks' Last Will and Testament to demonstrate that Kastner is not the Executor of the Estate. In Ms. Brooks' will, she names Intrust Bank as the executor. The will also provides that, if necessary, Ms. Brooks appoints as special administrator for her estate, pending the appointment of the executor, Intrust Bank.

[38]*In re Stahl's Estate*, 226 Kan. 48, 52, 596 P.2d 121, 125-26 (1979).

[39]Although Kastner asserts that he is the best person to protect the interests of the Estate, he cannot arbitrarily decide to appoint himself personal representative of the Estate.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss for failure to join an indispensable party is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Jessie I. Brooks, Plaintiff Estate of Jessie I. Brooks, and Plaintiff Kristofer Thomas Kastner, as personal representative of the Estate, are struck from the Complaint.

**IT IS SO ORDERED**.

Dated this 15th day of November, 2010.

                                                  ERIC F. MELGREN
                                                  UNITED STATES DISTRICT JUDGE